**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

---

Tamara L. Giwa
*Executive Director and
Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

May 14, 2024

By ECF and Email
The Honorable Natasha C. Merle
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Halima Salman, 24-mj-350 / 24-cr-189 (NCM)

Dear Judge Merle:

    I write to provide information on some of the cases discussed at yesterday's appearance,[1] and to enclose the two additional letters of support that were provided to the Court in hard copy form.

    In *United States v. Delowar Hossain*, 19 Cr. 606 (SHS) (S.D.N.Y.), Judge Sidney H. Stein released Mr. Hossain from custody to home incarceration enforced by a $250,000 personal recognizance bond co-signed by five financially responsible persons. Mr. Hossain was accused of attempting to provide material support for an act of terrorism (the attempted murder of U.S. nationals overseas) in violation of 18 U.S.C. § 2339A and attempting to provide material support to a specially designated global terrorist organization in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1705(a). Between the two counts charged, Mr. Hossain faced a maximum punishment of 35 years' imprisonment and sentencing guidelines at the statutory maximum.

    Specifically, the government accused Mr. Hossain, a well-adjusted man in his mid-30s, living in New York with a wife and children, of trying to recruit several young men (two of whom were confidential FBI informants) into a scheme to travel to Afghanistan and join the Taliban. Mr. Hossain initially discussed attacking a particular army recruiting office in the Bronx on behalf of Al Qaeda. Later, he resolved to move to Afghanistan to fight against Americans. Over several months, Hossain prepared for the trip by declaring himself the "emir" (leader) of his group, and of buying various items to use on the journey and give to the Taliban. The items included walkie-talkies, camping gear, hatchets, tents, and other outdoor materials to help the

---

[1] Relevant materials from these cases will be provided under separate cover.

group navigate the tough Afghan terrain. Hossain also saved $10,000 to purchase weapons, and was in contact with Taliban members. Hossain took various steps to hide his plans from authorities, including requiring that his group meet in person, which forced the FBI to hide microphones on the confidential sources to obtain the communications. Hossain was also accused of taking the group to strip clubs, bars, and other places considered to be "forbidden" in Islam to throw off the police. Hossain also repeatedly bragged to his comrades that he had set things up in a way to make his case difficult to prosecute, because it would look like the government was just targeting Muslims. Hossain was ultimately arrested at the airport alongside the two FBI informants before he could board a flight to Thailand, the first stop on his trip to join the Taliban.

Over the government's objections, Judge Stein released Mr. Hossain to home incarceration. Judge Stein found that the government had not met its burden as to dangerousness given Hossain's lack of a criminal record and because his alleged conduct was focused entirely overseas. Judge Stein further rejected that Hossain posed an insurmountable risk of flight given the personal recognizance bond and the five cosigners who were also sworn to the bond. Judge Stein partially tethered his decision to the lockdowns at MCC New York, which presented similar issues to the conditions now at MDC Brooklyn. Mr. Hossain remained on bail for nearly 16 months without a single violation, and was remanded following a guilty verdict at trial.

In *United States v. Hashimi et al.*, 22 Cr. 553 (ENV) (E.D.N.Y.), the defendants are charged with conspiracy to provide material support to a foreign terrorist organization, attempted material support, and money laundering, in violation of 18 U.S.C. § 2339B and § 1956(h). The defendants are accused of attempting to send tens of thousands of dollars to ISIS, using encrypted chats and cryptocurrency to avoid detection, consuming and disseminating ISIS propaganda, expressing support for violent acts of terrorism, and in the case of two of the defendants planning to visit an accused terrorist at Rikers Island.

At the initial appearance, Chief Magistrate Judge Pollak released defendant Seema Rahman and denied release as to defendant Abdullah At Taqi. Mr. At Taqi renewed his bail application before Magistrate Judge Merkl, which was again denied. At Taqi appealed the decision of the magistrate judge and on April 28, 2023, Judge Vitaliano granted the application over the government's objection. The two released defendants have not had any compliance issues to my knowledge. The third defendant remains detained.

In *United States v. Kim Anh Vo*, 19 Cr. 223 (NRB) (S.D.N.Y.), Judge Buchwald released the defendant on a consent bail package, the conditions of which included participation in a program aimed at countering extremism. Ms. Vo was charged with conspiring to provide material support to ISIS in violation of 18 U.S.C. § 2339B. Specifically, Vo worked as as member of the United Cyber Caliphate ("UCC"), which was committed to carrying out online attacks and cyber intrusions against Americans on behalf of ISIS, and recruiting others to expand UCC's capabilities. Vo attempted to disseminate violent ISIS propaganda threatening that "there will be blood today, tomorrow, and until your last breath" and recruited at least one minor to create content for the UCC, including a video and related posts of death threats targeting a nonprofit organization (dedicated to combating online extremism) in Manhattan as well as its leader. The threatening posts contained photographs of the CEO of the organization (a former

U.S. ambassador) along with a video of an individual in shackles with his throat slit and bleeding. Vo pledged allegiance to Abu Bakr Al-Baghdadi, then the leader of ISIS. After the March 2017 terrorist attack outside the British Parliament building in London, Vo discussed using the success of the attack in creating new ISIS messaging and propaganda. On April 2, 2017, UCC posted online a kill list containing the names and personal identifying information of over 8,000 individuals along with a threatening video, promising to wage war, and a second video depicting a beheading. Ms. Vo continued her efforts on behalf of UCC and ISIS even after learning she was under FBI scrutiny.

Ms. Vo ultimately pled guilty to the lesser offense of conspiring to provide material support, in violation of 18 U.S.C. § 371, with a 5 year statutory maximum sentence. She was sentenced to time served.

The lack of close bail comparators is due in large part to the fact that receipt of military-type training in violation of 18 U.S.C. § 2339D is generally charged in multi-count indictments in conjunction with other more serious charges including material support for terrorism or terrorist organizations in violation of 18 U.S.C. §§ 2339A and B, and murder or conspiracy to murder U.S. nationals in violation of 18 U.S.C. § 2332. *See, e.g.*, *United States v. Al-Hamidi*, 15 Cr. 56 (NGG) (E.D.N.Y.) (charging receipt of military-type training in addition to conspiracy to murder U.S. nationals abroad and conspiracy to provide material support to al Qaeda); *United States v. Ferid Imam et al.*, 10 Cr. 19 (BMC) (E.D.N.Y.) (charging receipt of military-type training in addition to conspiracy to commit murder, conspiracy to use weapons of mass destruction, and provision of material support to terrorism and a terrorist organization, among other charges); *United States vs. Asainov*, 19 Cr. 402 (NGG) (E.D.N.Y.) (charging receipt of military-type training in addition to conspiracy and provision of material support to a terrorist organization and obstruction of justice); *United States v. Saab*, 19 Cr. 676 (PGG) (S.D.N.Y.) (charging receipt of military-type training in addition to conspiracy and provision of material support to a terrorist organization, marriage fraud, citizenship fraud, and naturalization fraud). Aside from Ms. Salman, I am not aware of any other stand-alone prosecutions under Section 2339D.

Thank you for your consideration.

Respectfully Submitted,

_____/s/_____
Samuel Jacobson
Assistant Federal Defender
(718) 407-7429

cc:   all counsel of record (by ECF)
      U.S. Pretrial Services (by Email)